Marvin, J.
The case of the Prudential Insurance Company against Mary Kilbane is a proceeding in error brought for the purpose of reversing the judgment of the court of common *63 pleas of this county. The.original action was brougth by Mary Kilbane to recover upon two policies of insurance issued upon the life of John Kilbane who was her husband, and in which policies Mary Kilbane is named as the beneficiary.
The first of these policies was applied for on the 3rd day of August, 1893, and issued on the 21st day of the same month. The amount covered by that policy was one thous- and dollars ($1000.00).
The other policy was applied for on the 9th day of August, 1893, and issued on the 4th of October following, and the amount named in that policy was one thousand and five hundred dollars ($1500.00).
On the 29th of October, the same month in which the last policy was issued, John Kilbane died. The company declined to pay the amount provided in these two policies, and the petition was filed and a separate cause of action set out upon each of the policies.
The answer sets out substantially the same defense to each cause of action, that is, that John Kilbane in the application made for each of these policies, made false answers to questions put to him; that he made such false answers knowing them to be false, and that the company was without knowledge of the falsity of the answers; that these answers were upon matters that were material, and that if true answers had been made by the assured, the policies would not have been issued.
Among the questions required to be answered in the applications was the following, numbered 10, — and that is true as to each of these policies: “Are you now engaged in, or have you any intention of engaging in the manufacture or sale of malt or spirituous liquors?” To this he answered “No.” And in the series of questions provided to be answered by the applicant for insurance, to the medical examiner, the question in reference to this same subject-mat *64 ter reads as the tenth question in the applications made to the agent except that it adds to the words already given, the word “handling,” so that the question reads: “Are you now engaged in, or have you any intention of engaging in the1 manufactur or sale or handling of malt or spirituous liquors?” And in the medical examination, his answer to that question is “No.”
The occupation of the applicant is required to be given also; there is a blank left for that; and in the application, in each case, the occupation of the applicant is given as “foreman on the docks.”
Now the claim is, on the part of the plaintiff in error, the insurance company, that this man Kilbane was at the time when he obtained his insurance, and at the time when he applied for each of these policies, employed as bar-keeper in a drinking-saloon, and that he continued in that employment more or less from that time until he died.
The evidence tends to show that,though he was employed a part of the time upon the docks in handling ore, he, during a part of the time, but not perhaps as a steady employment, dealt out beer and whiskey at the bar of his father-in-law, It is said that the evidence tends to show more than this — 'that Kilbane was the proprietor of the bar — and, perhaps, this is true. It does show that a government revenue license was obtained in the name of the assured, for that business; and it shows that more or less he was employed in that saloon, though it can not be claimed that he made that a steady employment.
He worked a part of the time on the dock. But it is said on the part of the defendant here, the plaintiff below, that whatever the fact is as to the employment of the assured, it was known to the agent of the company what his employment was, and it was known that he did more or less work in the saloon; that he was in the saloon behind the bar at the time when one of these applications for insurance was made, *65 and that he furnished a drink, either of beer or whiskey, to the agent of the company at that time. And so it is said that such being the case, it is indifferent as to whether his answer was true or false to the question put, and in support of that view we are cited to section 3625 of the Revised Statutes, which reads:
“No answer to any interrogatory made by an applicant in his or her application for a policy, shall bar the right to recover upon any policy issued upon such application, or be used in evidence upon any trial to recover upon such policy, unless it be clearly proved that such answer is wilfully false and was fraudulently made, that it is material and induced the company to issue the policy, and that but for such answer the policy would not have been issued; and, moreover, that the agent or the company had no knowledge of the falsity or fraud of such answer.”
The plaintiff in error complains that the court erred in its instructions to the jury as to the effect of the knowledge on the part of the agent of the company, of the employment of the assured, and erred in its instructions as to the effect of a false answer being made by the assured upon these question.
As to whether John Kilbane falsely stated to the agent of the company what his employment was, we are referred to certain pages of the record where Mary Kilbane, the beneficiary, testified. On pages, both 18 and 27, of the record, she says that her husband told the agent he worked on the dock. She says that the agent was present when her husband dealt out liquor as I have already stated. And another witness, Peter McNeeley, testified to the same thing. And Mary Kilbane says, on page 18, that the agent of the company said to her husband at the time the application for one of these policies was signed: “I have put you down as foreman on the docks.” She cannot swear that the particular paper writing shown her on the witness-stand is the one then signed, — she can neither write nor read writing — but *66 she says that some paper was there that the agent brought to the saloon and laid down before her husband, and then the agent said to her husband: “I have put you down as foreman on the docks.” And Kilbane said: “I don’t care what you put me down, so I can get my insurance all straight. ”
Now it is urged that if, as a matter of fact, the agent knew of the employment of Kilbane as a dealer in intoxicating drinks, there must have been a connivance between the agent and Kilbane,and known to the beneficiary, to defraud the insurance company, and that, therefore, the insurance company ought not to be bound.
On the 63xd page, as I remember, of the bill of exceptions, the occupations in which if people are engaged, the company would not accept their applications or issue policies, are to be found, and among the risks not accepted are those of “bar-keeper, bar-tender, beer-bottling, and saloon-keeper. ’ ’
The general agent of the company testified at the trial that the universal custom of the company was to adhere to these rules and not accept the people engaged in the occupations thus enumerated in the list, and would not issue policies to people engaged in any of these occupations, And they say if it is true that the agent knew that the applicant was engaged in any one of these occupations, and saw fit to put him down as engaged in some other occupation, it was a conspiracy on the part of Kilbane and the agent, known to the beneficiary, and done with the intent to wrong the company; that this relieves the company from liability.
Counsel for the company requested the court to charge the jury:
“If John Kilbane knew at the time the applications were filled out, that the company’s agent inserted a false answer to question No. JO in the applications, and permitted the *67 same to be forwarded by the agent to the company so that the policies were issued thereupon, the policies are void,and plaintiff cannot recover.”
The second request reads:
“If the said John Kilbane falsely represented to the medical examiner of the company that he was not engaged in the 3ale or handling of malt or spirituous liquors, there can be no recovery.”
The third request reads:
“John Kilbane having warranted the statements contained in his applications to be true, if any of said statements are false, there can be no recovery by the plaintiff herein.”
The fourth request reads:
“If the jury find from the evidence, that John, Kilbane agreed with the company’s agent to make false statements as to his occupation, in his applications to the company, and did make such false statements, and the policies were issued on both of said applications containing false statements, there could be no recovery herein.”
The fifth request reads:
“The statute of Ohio, sec. 3625, is not intended to make an insurance company liable upon policies issued on applications containing answers known to the applicant to be false, and inserted in the applications by collusion between the applicant and the company’s agent.”
As to the first three of these requests it is clear that to have given either one of them would have been to have said to the jury that sec. 3625 of the statutes does not mean what it says; for it is clearly provided in that section, that no false answer given by the assured in his application shall be a defense to a suit upon the policy if the same was known to be false by either the company or its agent.
As to the fourth and fifth requests, each involves the question of whether, if the agent and the assured by collusion furnished false answers to the company to material questions.thereby inducing the company to issue its policy, *68 there can be a recovery. It is clear from the reading of the section of the statutes already given that its terms at least include cases covered by the two ¡requests; but it is urged that it cannot have been the intention of the legislature to bind insurance companies by the acts of their agents thus acting fraudulently with the company. The legislature was not content to say that the company should be held upon its policies where false answers were given with its kowledge, but went so far as to say that if the agent had knowledge of the falsity of the answers, such false answers should not prevent a recovery.
Ordinarily, what is known to the agent of a corporation, is known to the corporation, and if the legislature had not intended to make this statute more binding upon the company than results from the fact that what is known to the agent is known to the corporation, there was no reason for expressly designating the agent as one whose knowledge of the falsity of the answers should prevent the company from making the defense.
Suppose that each member of the board of directors of the company knew that the statements in the applications were not true, and agreed with the applicant that he might make these untrue statements and the policy should be issued, could it be claimed that the company could take the money of the man who applied, and then, when the loss occurred, refuse to pay because they had connived with him to have false answers made? If that can not be done, if the officers of this corporation, by acting in collusion with the assured and accepting his false answers, knowing them to be false, caused the policy to be issued, and accepted the money, it can not make the defense sought to be made here. It would seem that under this statute such conduct on the part of the agent, would be equally unavailing asa defense.
My attention has been called to an opinion delivered by Judge Woodbury, in the circuit court of Jefferson county, *69 —the case is not reported, but I have a typewritten copy of the opinion before me; this was a suit upon a policy of life insurance. I am strongly impressed with the soundness of the reasoning in this opinion, and I quote from it as follows:
“The request which raises this question, is marked number 4 a.
“If the jury find that M. S. Longdon, the agent of the defendant, and Jesse R. Adams, conspired together to commit a fraud upon the defendant, and in pursuance with this conspiracy caused false and untrue statements to be made in the application, material to the risk, and if you find that the application, so made, was forwarded to the defendant, and on the strength of that application so made, the policy on which the suit was brought was issued and delivered to the said Jesse R. Adams, then, in that case, the same was and is void for fraud, and your verdict should be for defendant. ”
“This request the court refused to give. Now, in the charge, there is an exception that involves the same question. On page 51 of the record:
“The plaintiff in reply to the answer of defendant, denies that Jesse R. Adams, in the particulars wnerein the defendant says that he made false and fraudulent representations, did make the representations claimed, and avers that as to those particulars he stated to the agent of the company, at the time of preparing the application, the truth, and that the answers in said application which are untrue, were inserted therein by the soliciting agent of the company, upon his own motion, and after he had been truly informed in regard thereto. That the answers complained of by the defen'dant as false and fraudulent, may vitiate the policy and defeat a recovery by plaintiff, you must find in the light of the testimony which has been given before you, that the answer or answers complained of were made by Jesse R. Adams; that the same were wilfully false on his part, and were by him fraudulently made; that the same were material and induced the company to issue the policy, and that but for such answers, the policy would not have been issued, and moreover, that the agent of the company had no knowledge of the falsity or fraud of such answers,
*70 “So far as this charge, itself, is concerned, it is - in the language of the statute, and it is evidently copied from it. Sojwe are brought squarely to the question: What was meant by the legislature in the passage, or enactment, of this statute?
“It is insisted on the part of the plaintiff in error, that it was not the intention of the legislature, under this statute, to provide that the company should be liable under it, if the agent as well as the applicant, should both combine to defraud the company in the application and in the procurement of the policy; that the intent of the legislature was not this, but that in such case it was not the intention of the legislature to provide for a recovery.”
Judge Woodbury then called attention to the evil which had grown up throughout the state by provisions being inserted in policies, both of life and fire insurance companies, to the effect that the agent to whom the application was made, should be held as the agent of the assured, and then says:
“And there had been more or less litigation in the state growing out of the very question involved in this case where false answers had been made,or where the agent himself had practiced a fraud upon the company; and a notable case is a case cited in the 30th of the Ohio St., and the cases following, in the 33d and 39th of Ohio St., where the company were seeking to avoid liability — although, confessedly the fraud had been perpetrated by the agent — yet they were seeking to avoid liability, by charging home the fraud of their agent — treating him as not their party for whom they were responsible — but treating him as a third person whose fraud should relieve the company from liability, as well as the fraud of the applicant.”
Judge Woodbury further says:
“Now, in this condition of things,the legislature stepped forward, and evidently deemed it just that there should be some legislation that should settle this matter in the state of Ohio; and so they have provided, in the first instance, that no answer shall be held to preclude the right to recovery, unless it shall be clearly shown that they are fraudu *71 lent — second, that they are material- — -third, that the policy would not have been issued if the true answers had been given; and then — -to meet the further perplexity in regard to the agent, they further provide, ‘Moreover, that the agent or company had no knowledge of the falsity or fraud of such answers. ’ ”
“Now, the effect of this is,perhaps, to place it where the knowledge of the agent has been shown — exactly the same as if the company itself, by its authorized officers, had possessed the knowledge which the agent, himself, is alleged to have possessed.”
Again quoting from Judge Woodbury:
“Now, with the agent standing exactly in the same relation to the company, and with a statutory provision providing that, before the false answer shall defeat a recovery, that it must be clearly shown that the agent of the company did not know, or, moreover, that the agent of the company had no knowledge of the falsity or fraud of such answers. Wé think the legislature intended to meet just such a case as this.”
Without stopping to read the charge — the things complained of grew out of this same view, that is to say, the court not only refused to charge the requests, but charged that sec. 3625 applied to this case, and that knowledge on. the part of the agent of the falsity of the answers would make the defense of such falsity unavailing in this case.
We find no error in the refusal of the court to charge as requested, and no error in the charge as given.
But there is another complaint made, which is, that the court was requested by the insurance company to submit two special findings to the jury, which the court declined to do. The right to have these questions submitted is claimed under a statute found in vol. 91 O. L., sec. 5201, page 298:
“But the court shall, at the request of either party, direct them to give a special verdict in writing upon, all *72 or any of the issues, and in all cases when requested by either party, the court shall instruct the jurors if they render a general verdict, to find specially upon particular questions of fact to be stated in writing, and shall direct a written finding thereon, and the verdict and finding must be filed with the clerk and entered on the journal.”
Because of that statute, and relying upon j^that statute as the authority for doing it, the defendant duly requested that these two questions be submitted to the jury for special findings:
“First: — 'Did the agent of the defendant company, know at the time that John Kilbane signed the application for the first policy of insurance sued upon here, that the said John Kilbane was engaged in the sale and handling of spirituous liquors?”
“Second: — ’Did the agent of the company know that the said John Kilbane was engaged in the sale or handling of spirituous liquors?”
Of course, if one of these requests should have been submitted to the jury, both should have been. The court did not submit them. Now, if these questions were calculated to mislead the jury — if they did not fairly submit to the jury the question which was in issue in the case,then it was error not to decline to submit them to the jury. ¡The questions assume that Kilbane was engaged in the handling and selling of liquor.
If the questions had been in effect: “Did the agent of the company, know in what business John Kilbane was engaged at the time he made his application for insurance,” it would have been entirely proper, and should have been submitted to the jury. Or, if this question had been asked to be submitted, “Was John Kilbane, at the time of the making of his application for either of the policies, engaged in selling or handling spirituous or malt liquors,” it should have been submitted to the jury.
But there is a dispute in this record, as to whether Kii *73 bane could be fairly said to be engaged in such sale or handling of liquors. The jury, if the questions proposed had been submitted to them, might have believed, as a matter of fact, that John Kilbane was not engaged in the handling or .sale of liquor, and so must have answered to each of these questions,“No.” If such answer had been made,and a verdict had been rendered for the pla-intiff below, it would háve been urged that the general verdict was inconsistent with' the special findings, and the jury might well have reason to say, “if we answer these questions “no,” it will be said' that we must find a verdict for the defendant.” Yet, it is clear, that if they believed that Kilbane was not thus engaged in the liquor business, the answer to each of these questions must have been “no.”
It was not error on the part of the court to refuse to submit these questions to the jury.
There is one other matter complained of, and that is, the court in its charge said to the jury, that it was wholly indifferent whether Kilbane was a foreman on the dock or not, or whether he said that he was such foreman. The meaning of the court clearly was, that if he was employed on the dock, it was of no importance whether he was, or was not, a foreman.
There is nothing in the record to show that the plaintiff in error could have been prejudiced by this language in the charge, and the judgment of the court of common pleas is affirmed.